IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER KEUM,<br><br>        Plaintiff,<br><br>   v.<br><br>VIRGIN AMERICA INC., et al.,<br><br>        Defendants.<br>_____/ | No. C 10-03285 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART VIRGIN'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

On February 25, 2011, the Court heard argument on defendant Virgin America's motion for judgment on the pleadings. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion. If plaintiff wishes to amend the complaint, the amended complaint must be filed no later than **March 18, 2011.** As requested by the parties, the case management conference scheduled for March 4, 2011 is rescheduled for March 18, 2011 at 2:30 pm.

**BACKGROUND**

Plaintiff Jennifer Keum ("Keum") was a passenger on a Virgin America ("Virgin") flight from Seattle to San Francisco on May 27, 2010. During the flight, Keum alleges that the flight attendant ("Kelly"), an employee of Virgin, was "very rude and impatient to non-Caucasian passengers." *Id.* at ¶¶ 4, 13. Keum is of Korean descent. *Id.* at ¶ 1.

The situation escalated when Keum, seated in the front of the coach section, returned from using the first class restroom. *Id.* at ¶¶ 15-16. Keum alleges that Kelly approached her seat and began to yell at her for using the first class restroom. *Id.* at ¶ 16. Keum further alleges that Kelly stood so close while

1 yelling that she could feel his saliva striking her face, forcing her to turn aside. *Id.* When Keum turned
2 away, she claims that Kelly punched her shoulder, causing her to scream and her arm to feel numb. *Id.*
3 Keum alleges that a Caucasian passenger, also seated in the coach section, used the same restroom
4 without receiving the same treatment. *Id.*

5 Upon arrival in San Francisco, Keum and her mother, who was present throughout the encounter,
6 filed a complaint with Virgin's Customer Service Department. *Id.* at ¶ 18. Keum alleges that an
7 African-American woman overheard Keum speaking with Virgin's Customer Service department and
8 stated that the flight attendant had been very rude to her as well. *Id.* at ¶ 19. Keum also filed a police
9 report with the San Francisco police at a later date. *Id.* at ¶ 20.

10 Keum's complaint alleges seven causes of action: (1) negligent hiring, training, supervision,
11 and/or retention of an unfit employee; (2) assault and battery; (3) negligence; (4) intentional infliction
12 of emotional distress ("IIED"); (5) discrimination under 42 U.S.C. § 1981; (6) violation of Title VI of
13 the Civil Rights Act of 1964; and (7) discrimination under the Unruh Civil Rights Act, Cal. Civ. Code
14 § 51. Virgin has moved for judgment on the pleadings, contending that Keum has failed to state
15 plausible facts sufficient to state a cause of action (except with regard to her claim for battery), and that
16 her claims under California law are preempted by the Federal Aviation Act ("FAA").

17
18 **LEGAL STANDARD**
19 The legal standard for a 12(c) motion is substantially identical to the legal standard for a 12(b)(6)
20 motion. *See* William W. Schwarzer et al., California Practice Guide; Federal Civil Procedure, § 9:319.
21 Under either provision, a court must determine whether the facts alleged in the complaint, to be taken
22 for these purposes as true, entitle the plaintiff to a legal remedy. *See Usher v. City of Los Angeles*, 828
23 F.2d 556, 561 (9th Cir. 1987). "For purposes of the motion, the allegations of the non-moving party
24 must be accepted as true, while the allegations of the moving party which have been denied are assumed
25 to be false. Judgment on the pleadings is proper when the moving party clearly establishes on the face
26 of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment
27 as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th
28 Cir.1990). Additionally, "[t]his standard is applied with particular strictness when the claim is for an

2

alleged civil rights violation." *Foster v. Edmonds*, No. C 07-05445, 2008 WL 4415316, at *1 (N.D. Cal. Sept. 26, 2008) (Judge Alsup) (quoting *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996)). This does not mean that courts must accept every allegation made by the plaintiff as true, however: "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Plaintiffs need not allege every detail that would support their claims but they must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed, or judgment granted on the pleadings. *Id.* at 1949-50.

If the Court dismisses a claim, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (quotation marks and citations omitted).

**DISCUSSION**

**I.   Federal preemption**

Keum frames her tort claims as violations of the California standard of care, codified at California Civil Code section 2103, as well as violations of California anti-discrimination law. Virgin argues that both the state standard of care and state anti-discrimination laws are preempted by the FAA. Virgin argues that the FAA, through the Code of Federal Regulations ("CFR"), establishes a federal standard of care that preempts the state standard of care.

The FAA primarily sets forth federal law in the fields of the economic regulation of airlines and airline safety. 49 U.S.C. § 40101 *et seq.* Airline safety includes such matters as in-flight warnings (*Montalvo v. Spirit Airlines*, 508 F.3d 464, 473 (9th Cir. 2007)); navigable airspace and noise control

3

(*Gustafson v. City of Lake Angelus*, 76 F.3d 778, 786 (6th Cir.1996)); and "pilot certification, pilot pre-flight duties, pilot flight responsibilities, and flight rules." (*Abdullah v. American Airlines*, 181 F.3d 363, 369 (3d Cir. 1999)). The FAA itself does not clearly establish a federal standard of care; the Code of Federal Regulations does, but only as applied to "aircraft operators." 14 C.F.R. § 91.13.

California law, on the other hand, includes a statutory standard of care for common carriers. California Civil Code section 2103 states: "A carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility, and give them a reasonable degree of attention." This standard of care applies to all common carriers, although some courts have held that, in the context of airlines, it is preempted by the FAA. *See, e.g., Abou-Jaoude v. British Airways*, 228 Cal. App. 3d 1137, 1141-42 (1991) (holding that California "Civil Code section 2103 is expressly preempted by the [FAA] because section 2103 directly attempts to regulate the services of common carriers, including airlines").

For claims not involving airline safety, such as certain personal injury tort claims, the Ninth Circuit has continued to apply California law. *See Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998) (en banc). *Charas* consolidated five cases brought by passengers who alleged in-flight injuries. *Id.* at 1261-62. In each case, the airlines argued that the passenger's claims were preempted by the Airline Deregulation Act ("ADA"). *Id.* In holding that passenger injury claims were not preempted by the ADA, the court stated that when Congress created federal regulations in the airline industry, it "did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct." *Id.* By holding that tort claims relating to services such as the "pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions" are not preempted, the Ninth Circuit expressly overruled *Harris v. American Airlines, Inc.*, 55 F.3d 1472 (9th Cir. 1995) and *Gee v. Southwest Airlines*, 110 F.3d 1400 (9th Cir. 1997). *Charas*, 160 F.3d at 1266.

The Ninth Circuit considered and rejected the argument that the term "operates," as used in section 91.13 of the Code of Federal Regulations, should be read broadly to include all aircraft personnel. *Martin ex rel. Heckman v. Midwest Express Holdings*, 555 F.3d 806 (9th Cir. 2009). In *Martin*, the court noted that while tort claims implicating airline safety are preempted by the FAA, other

4

tort claims, such as those based on defective product claims, are not. *Id.* at 809. "The FAA itself makes no mention of federal courts developing a federal common law standard of care for airplane personal injury actions, and there is no federal general common law." *Id.* at 811 (internal quotation and citation omitted). The court concluded that:

> *Montalvo*, then, neither precludes all claims except those based on violations of specific federal regulations, nor requires federal courts to independently develop a standard of care when there are no relevant federal regulations. Instead, it means that when the agency issues "pervasive regulations" in an area, like passenger warnings, the FAA preempts all state law claims in that area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable.

*Id.* This holding clarified the Ninth Circuit's previous decision in *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007). In *Montalvo*, the Ninth Circuit discussed whether the state standard of care is preempted in the context of tort claims directed at airlines, where those claims implicated aircraft safety concerns. *Id.* The court held that "federal law generally establishes the applicable standards of care in the field of aviation safety." *Id.* at 468. *Montalvo* addressed a claim specifically related to safety warnings, which the Ninth Circuit held to be so comprehensively regulated by the FAA as to create a general preemption in that arena. *Id.*

Taken together, *Martin* and *Montalvo* stand for the proposition that while the state standard of care is preempted in the context of claims directly implicating airline safety, state laws and standards of duty apply to claims directed at matters not directly touching on airline safety or other fields with pervasive regulations.[1] Where no preemption has occurred, airlines are bound by the heightened duty of care applied to common carriers. *See Eid v. Alaska Airlines*, 621 F.3d 858, 865-66 (9th Cir. 2010) ("In the absence of statute, common carriers such as airlines have the duty to secure the utmost care and diligence in the performance of their duties, which means in regard to passengers . . . the highest degree of carefulness and diligence."); *see also Andrews v. United Airlines, Inc.*, 24 F.3d 39, 40 (9th Cir. 1994) (applying California law to hold that airlines are responsible for "any, even the slightest, negligence and

---

[1] At oral argument, Virgin argued that two more circuits recently adopted the holding in *Abdullah v. American Airlines*, 181 F.3d 363 (3d Cir. 1999), in which the Third Circuit held that "federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." It is true that the Second Circuit explicitly adopted this position in *Goodspeed Airport LLC v. East Haddam Inland Wetlands and Watercourses*, 2011 WL 447052 (2d Cir. Feb. 10, 2011). However, Virgin fails to recognize that this was already the Ninth Circuit's position, as expressed in *Montalvo*, 508 F.3d at 468.

5

[are] required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances") (internal citations and quotation omitted).

In Keum's case, the question is therefore whether the federal government has created such pervasive regulations in the fields affected by her claims that all relevant state laws have been preempted. Keum's tort claims do not clearly implicate airline safety; therefore, for the purposes of this motion the Court will assume that there is no blanket field preemption, and that the state standard of care applies to Keum's state tort claims.[2]

## II.  Plaintiff's negligence-based claims

Keum alleges two negligence-based claims: negligent hiring and negligence in general. Keum asserts both direct and indirect liability under each claim. She bases her direct liability claim on the allegation that Virgin was negligent in its hiring, training, supervision, and/or termination of Kelly, as well as Virgin's position as a common carrier, while she bases her indirect claims on the theory of *respondeat superior*. Keum alleges that she suffered mental distress due to Kelly's actions, that Kelly struck her arm during the encounter, that Kelly was unfit to perform his duties, and that Virgin was aware of Kelly's lack of fitness for the job.

Virgin argues that Keum has failed to assert physical injury sufficient to maintain her negligence claims and that she has additionally failed to support her assertion that Virgin was aware of its employee's potential for inappropriate behavior. Virgin does not dispute its potential liability under *respondeat superior* or its position as a common carrier but asserts that the standard of care set forth by Keum is incorrect. Because Virgin failed to demonstrate that Keum's claims are preempted, as discussed above, the Court will apply the state law standard for the purposes of this motion.

The elements of a cause of action for negligence are: "(1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury." 6 Witkin,

---

[2] Because this is a motion for judgment on the pleadings, determining whether Keum's claims *could* be preempted is neither possible nor appropriate. The only question presently before the Court is whether, as a matter of law, Keum's claims *must* be preempted. Because it is not clear, from the record presently before the Court, that any of Keum's claims belong to a category where pervasive federal regulation exists, the present motion must be denied.

Summary of Torts § 835 (10th ed. 2005). In any claim for negligence, the plaintiff must first demonstrate that the defendant owed her a duty of care. *Id.* at § 1038. California courts apply the seven-factor *Rowland* test to determine whether a duty exists that would support a finding of negligence. *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968) (overruled in other part). A party may have a particular duty towards the plaintiff, which results in direct liability, or a more general duty as an employer, which results in liability through the theory of *respondeat superior*. Once the defendant's duty has been established, the plaintiff must show that defendant breached that duty and thereby proximately caused her injury.

### A. Negligent hiring, training, supervision, and/or retention of an unfit employee

Keum alleges that Kelly "was incompetent and unfit to perform the duties for which he was employed, and that an undue risk to persons such as plaintiff would exist because of the employment." Compl. ¶ 22. Keum further alleges that Virgin proximately caused her injuries by failing to adequately train and supervise, or properly terminate, Kelly. Keum alleges that Virgin retained Kelly as an employee "[d]espite this advance knowledge of [his] unfitness to perform his duties[.]" *Id.* at ¶ 24.

Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790, 815 (2006). Negligence is a core element of this claim - the plaintiff must demonstrate that the employer "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.* The requirement that an employer have knowledge of the employee's potential danger relates to the foreseeability requirement discussed in the first prong of the *Rowland* test. Rest. 3d Agen. § 7.05, comment d.

Virgin argues that Keum has failed to state plausible allegations supporting her claim that Virgin had advance knowledge that its employee would be a danger to others. Under *Iqbal*, conclusory statements do not suffice to establish material facts necessary to state a claim upon which relief may be granted. *Iqbal*, 129 S.Ct. at 1949. Knowledge of an employee's potential danger to others is an element

7

of a negligent hiring claim and therefore must be alleged through more than mere conclusory statements. Keum's allegation that Virgin had advance knowledge of Kelly's alleged violent tendencies is conclusory and not supported by any other factual allegations. *See* Compl. at ¶ 24 ("Despite this advance knowledge of [Kelly's] unfitness to perform his duties, [Virgin] retained [Kelly] as an employee . . . ."). Keum's allegation that no supervisor or other attendant came to Keum's assistance, which demonstrates a lack of adequate supervision, is similarly inadequate, because Keum has not alleged that other attendants and supervisors knew or should have known that they were needed. Nowhere in the complaint does Keum state that other flight attendants saw the encounter, or that she sought help from another Virgin employee until after the incident when she filed a complaint with Virgin's Customer Service Department. Accordingly, the Court GRANTS Virgin's motion for judgment on the pleadings regarding Keum's negligent hiring claim, and GRANTS Keum leave to amend to allege facts showing that Virgin had advance knowledge of Kelly's lack of fitness for the job as a flight attendant.

### B. Negligence

The parties agree that the basic elements of negligence apply to Keum's claim of standard negligence as well as to her claim of negligent hiring, training, supervision, and/or retention. Keum alleges that Virgin had a duty to provide her with a safe place to conduct travel and that Virgin breached that duty. Keum alleges that by breaching its duty, Virgin directly and proximately caused her "extreme and enduring emotional distress." Compl. ¶ 38. This is essentially a claim for negligent infliction of emotional distress ("NIED"), because although Keum alleges that Kelly punched her arm, she does not allege injury beyond momentary numbness. Virgin argues that Keum's claim should be dismissed both due to federal preemption, as discussed above, and failure to state a claim. Virgin bases its argument on the theory that mere emotional distress is insufficient to support a claim of negligence in California. Additionally, Virgin argues that without evidence that Virgin "condoned or encouraged their employees to physically strike the customers, no direct claim of negligence exists against Virgin." Def. Mem. of P. & A. at 11-12.

Both sides rely on the same case, *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993).

8

The court noted that "in California, 'damages for negligently inflicted emotional distress may be recovered in the absence of physical injury or impact. . . .'" *Id.* at 986 (quoting *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1074 (1992)). More specifically, the court held that "'physical injury is not a prerequisite for recovering damages for serious emotional distress,' especially where 'there exists a guarantee of genuineness in the circumstances of the case.'" *Id.* (quoting *Burgess*, 2 Cal. 4th at 1079) (emphasis in original). On the other hand, the court also held that

> unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

*Id.* at 985. Therefore, under *Potter*, a claim based on purely emotional damage is permissible in certain circumstances, although those circumstances are "rare exceptions" and require some guarantee of genuineness. *Id.*; *see also Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 799-801 (1992) (listing cases involving mishandling of cremated remains, incorrect diagnosis of syphilis, breach of fiduciary duties, and witnessing an injury to a close relative as examples of situations in which damages could be awarded for purely emotional damages); *but see Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1190 (S.D. Cal., 2007) (denying judgment on the pleadings requested due to the plaintiff's failure to allege a physical injury as part of an NIED claim).

Virgin's duty towards Keum was to provide her with a safe place to travel. According to Keum's allegations, which the Court takes as true for the purposes of this motion, Virgin breached that duty by employing Kelly, who caused Keum's injuries in the course of his employment. While it is not clear whether the blow alleged by Keum qualifies as a physical injury, or whether her allegations state emotional distress severe enough to support a decision in her favor, in order to defeat a motion for judgment on the pleadings, Keum need only allege facts that *could* support a claim of NIED. Virgin's motion for judgment on the pleadings regarding Keum's negligence claim is DENIED.

9

**III.  Plaintiff's intentional tort claims**

    **A.  Intentional infliction of emotional distress ("IIED")**

Keum alleges that Kelly yelled at her while in close proximity, resulting in some of Kelly's saliva hitting her face, and punched her in the arm, causing Keum to scream and her arm to feel numb. Virgin argues that while this behavior, which the Court must accept as true for the purposes of this motion, is highly unpleasant, it does not rise to the level of being so extreme and outrageous as to be intolerable in a civilized society.

The elements of an IIED claim are similar to those of an NIED claim; the primary differences are that a claim of IIED explicitly does not require any showing of physical harm and is based in an intentional act. The Restatement of Torts defines IIED as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. As thus defined, the tort consists of the following four elements: (1) the defendant must have acted intentionally or with reckless disregard of the consequences; (2) the defendant's conduct must have been extreme or outrageous; (3) the plaintiff must have suffered severe emotional distress; and (4) the defendant's conduct must have been the cause of such emotional distress.

Rest. Torts (2d) § 46(1) (1965).

Just as in the case of Keum's NIED claim, in order to defeat a motion for judgment on the pleadings, Keum need only allege facts that *could* support a claim of IIED. She has alleged behavior that could be interpreted as extreme, and that she suffered extreme emotional distress as a result. Therefore, Virgin's motion for judgment on the pleadings regarding Keum's IIED claim is DENIED.

    **B.  Assault and battery**

Keum alleges that Kelly "acted with the intent to make harmful contact with [her] . . . ." Compl. ¶ 30. She also alleges that Kelly "began yelling at [her]" while standing so close that she could "feel [his] saliva hitting her face." *Id.* at ¶ 16. She also alleges that Kelly "became so infuriated . . . that he punched [her] in the arm." *Id.* Virgin concedes that Keum has sufficiently stated a claim of battery against Virgin in its role of employer through the doctrine of *respondeat superior*. However, Virgin argues that Keum failed to allege the necessary elements of assault.

10

Under California law, the definition of assault is "[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. An assault does not require either an intent to physically injure or an actual physical injury, but only the reasonable apprehension of imminent harmful touching. *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222, 232 (1983). Assault is attempted battery, while battery is a completed assault. *People v. Colantuono*, 7 Cal. 4th 206, 216-17 (1994). By conceding the sufficiency of Keum's claim for battery, Virgin has effectively conceded the sufficiency of Keum's claim for assault. *See id.* ("[I]t is impossible to commit battery without assaulting the victim."). Therefore, Virgin's motion for judgment on the pleadings regarding Keum's assault claim is DENIED.

### IV. Keum's discrimination claims

Keum alleges three claims based on racial discrimination. Two claims are based on federal law (42 U.S.C. §§ 1981 and 42 U.S.C. 2000 (d) ("Title VI")), while the third is based on California Civil Code §§ 51 and 51.5 ("Unruh Act"). Virgin argues that all three claims should be dismissed for failure to state a claim. Virgin also argues that Keum's Unruh Act claim is preempted by federal law.

#### A.     42 U.S.C. § 1981

To state a claim pursuant to section 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Hood v. Delta Airlines*, No. C 98-4024 (N.D. Cal., Apr. 2, 1999).

Virgin argues that Keum failed to "plead plausible facts to establish an intent to discriminate on the part of Virgin or its employees." Def. Mot. at 4. Virgin also argues that Kelly's alleged reaction to Keum's use of the first class bathroom was motivated by airline policies, not discriminatory animus.

Keum alleges that she was denied services, prevented from using facilities to which Caucasian passengers were permitted, and treated differently than Caucasian passengers were. Given the low threshold for defeating a motion for judgment on the pleadings, Keum's allegations must be seen as adequate, though not by a particularly large margin. *Trigueros v. Southwest Airlines*, No.

11

O5-CV-2256-L, 2007 WL 2502151, at *4 (S.D. Cal., August 30, 2007) (holding that plaintiffs who alleged rude and harassing treatment from airline employees had stated a sufficient claim to establish a prima facie case and thus shift the burden to the airline to demonstrate a non-discriminatory explanation).

Virgin's motion for judgment on the pleadings regarding Keum's section 1981 claim is DENIED.

### B. Title VI

Virgin argues that Keum failed to allege that Virgin is the recipient of any federal subsidies, which Virgin argues is a necessary element of a Title VI claim. Title VI prohibits discrimination by "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000 (d). Airlines receiving subsidies are required to comply with Title VI. 14 C.F.R. § 271.9.

Keum concedes that she failed to adequately state a claim for relief under Title VI and asks for leave to amend. Virgin's motion for judgment on the pleadings with regard to Keum's Title VI claim is GRANTED. Keum is GRANTED leave to amend in order to adequately allege that Virgin was, at the time of the alleged incident, receiving federal financial assistance.

### C. Unruh Civil Rights Act, Cal. Civ. Code § 51

Keum alleges that Kelly's discriminatory actions also violated her rights under California's Unruh Act. Virgin argues that Keum has failed to allege that the incident in question took place in California and that even if she had, the claim would be preempted by federal law.

The Unruh Act states:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51 (b).

California courts that have addressed the question of whether the Unruh Act is preempted have held that the Unruh Act is not in actual conflict with federal anti-discrimination laws. *Abou-Jaoude*,

228 Cal. App. 3d at 1144-45. Therefore, the courts have held that the Unruh Act is not preempted. *Id.*

The Unruh Act only applies to discrimination that takes place within California's jurisdiction. *Sousanis v. Northwest Airlines, Inc.*, No. C-99-2994, 2000 WL 34015861, at *7 (N.D. Cal. March 3, 2000) (Judge Patel) (holding that actions that took place while a plane was on the ground in Detroit were not governed by the Unruh Act, regardless of the plane's ultimate destination). Keum's complaint did not allege that the events in question took place in California; moreover, the fact that the flight was due to terminate in California is insufficient to bring the entire flight under California's governance. Therefore, Virgin's motion for judgment on the pleadings regarding Keum's Unruh Act claim is GRANTED. Keum is GRANTED leave to amend in order to allege that the events took place within California's jurisdiction.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part Virgin's Motion for Judgment on the Pleadings. Docket 22. With regard to Keum's first, sixth, and seventh causes of action, Virgin's motion is GRANTED. Keum is granted leave to amend all three claims. If Keum wishes to amend her complaint, the amended complaint must be filed no later than March 18, 2011. With regard to Keum's second, third, fourth, and fifth causes of action, Virgin's motion is DENIED.

**IT IS SO ORDERED.**

Dated: March 4, 2011

SUSAN ILLSTON
United States District Judge